IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VINCENT POLLERE, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | No. 15-2421 |
| v. | : | |
| | : | |
| USIG PENNSYLVANIA, INC., | : | |
| and | : | |
| US INSTALLATION GROUP, INC., | : | |
| Defendants. | : | |

MCHUGH, J.                                                                                           DECEMBER 18, 2015

## MEMORANDUM

This case concerns employment discrimination allegations that an employer discriminated against an employee based on both the employee's own disability and the disability of the employee's spouse. The Defendants seek to dismiss only the claim of "association discrimination," and for the reasons that follow, the motion will be denied.

**I. Factual Background**

In ruling on a motion to dismiss, the Court will presume the truth of the factual allegations in the Amended Complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Plaintiff, Vincent Pollere was hired by Defendant, USIG, a carpet company, as a project coordinator in 2008. Pollere began working at USIG's Hatboro office just outside of Philadelphia. In that role, Pollere was responsible for interfacing with subcontractors and supervising job sites. Pollere was transferred to USIG's office in Melbourne, Florida, where he served as general manager from September 2011 to February 2012. Pollere then returned to USIG's Hatboro office.

In the fall of 2012, Pollere's wife, Mary Ellen, began suffering from spinal meningitis. Mary Ellen's symptoms included dizziness, light headedness, lethargy, and headaches—all of which impaired her ability to walk, eat, sleep, and care for herself.  As a result of her condition, Mary Ellen was hospitalized from January 25, 2013 until February 2, 2013.  Pollere took time off from work pursuant to the Family and Medical Leave Act ("FMLA") from January 7, 2013 to March 31, 2013 in order to care for his ailing wife.  Pollere returned to work on April 1, 2013. Mary Ellen continued to suffer from spinal meningitis until September 2014.

Pollere—unrelated to his wife's condition—suffered from plaque psoriasis.  When dormant, Pollere's psoriasis was exhibited by symptoms of red, flaky, scaly, or cracked skin. These symptoms caused frequent itching and required oral medication.  USIG was aware of Pollere's plaque psoriasis.

After Pollere returned to work from FMLA leave on April 1, 2013, his plaque psoriasis worsened as he suffered a "flare up."  Pollere's symptoms included a large rash, flaking skin, and an inability to maintain his normal body temperature, which required him to wear a winter coat at all times.  These symptoms were visible to other employees, including Kevin Gamble, Pollere's direct supervisor.  Between April 22 and April 24, 2013, Pollere was hospitalized and diagnosed with unstable angina, coronary artery disease with drug-eluting stent placement in his right coronary, and psoriasis.

Pollere returned to work on April 29, 2013.  On April 30, Pollere received an "Employee Performance Notice."  That notice stated that Pollere had used up all of his medical leave and that he left work early every day during the week of April 15, 2013.  In his Amended Complaint, Pollere posits that he was scheduled to work from 6:30 a.m. to 5:00 p.m.  The Employee

Performance Notice indicated that Pollere left work, respectively, at 5:03 p.m., 5:00 p.m., 5:01 p.m., 5:00 p.m., and 5:00 p.m.  If Pollere is correct, he was cited inaccurately.

Between April 24 and June 15, 2013, Pollere was only able to work sparingly.  During that period, Pollere was readmitted to the hospital because of his psoriasis.  Despite his frequent absences from work, Pollere and his wife kept USIG informed about his condition.  According to his Amended Complaint, USIG never voiced any objection to Pollere's absences between May 30 and June 8, 2013.  On Saturday June 8, 2013, Pollere received a letter from John Ayers, USIG's head of human resources, informing him that he needed to provide them with a doctor's note explaining his absences by June 10, 2013.  That letter stated that Pollere's job would be considered abandoned if he did not provide USIG with the doctor's note by June 10.  Pollere called Ayers on June 10 but he was absent from work.  On June 11, Pollere reached Ayers and informed him that he would obtain a doctor's note and provide it to Ayers on June 13.  Ayers voiced no objection.  Pollere obtained the note from Dr. Abby Van Voorhees on June 13 and provided it to USIG.  Dr. Van Voorhees indicated that Pollere was under her care and that he would be able to return to work on June 17, 2013.

On June 15, 2013, Pollere received a letter from USIG stating that his frequent absences were being treated as a resignation and his employment status was being changed to "inactive."  Pollere filed the instant lawsuit on or about May 1, 2015.  In his Amended Complaint, Pollere asserted two claims: (1) discrimination based on his disability under the Americans with Disabilities Act ("ADA") and (2) discrimination on the basis of association with a disabled individual under the ADA because of his wife's spinal meningitis.  USIG has filed a Partial Motion to Dismiss Pollere's discrimination on the basis of association claim.  For the reasons sets forth below, USIG's Motion will be denied.

**II. Legal Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The United States Supreme Court's recent decisions in *Bell Atl. Corp. v. Twombly*, and *Ashcroft v. Iqbal*, altered the manner in which courts analyze a Rule 12(b)(6) motion to dismiss. *Twombly*, 550 U.S. 544 (2007); *Iqbal*, 556 U.S. 662 (2009). The Third Circuit observed that "pleading standards have seemingly shifted … to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

After *Twombly*, it is no longer sufficient for a plaintiff to merely allege the elements of a cause of action. *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Rather, a complaint must set forth facts suggestive of the proscribed conduct sufficient to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of a cause of action. *Id.* at 233–34. Conclusory allegations, without more, will not "unlock the doors of discovery" for the plaintiff and are not considered when the court is determining whether the factual allegations of the complaint are enough to state a *plausible* claim. *Iqbal,* 556 U.S. at 678.

In *Iqbal*, the Supreme Court set forth the following two-pronged approach for federal courts to apply in determining whether a complaint should be dismissed: (1) the court should not assume legal conclusions as true, and (2) after identifying the complaint's "well-pleaded factual allegations, a court should assume their veracity and then determine whether they *plausibly* give rise to an entitlement to relief." *Id.* at 664.

**III. Analysis**

The Americans with Disabilities Act (ADA) prohibits employers from discriminating against "a qualified individual on the basis of a disability." 42 U.S.C. § 12112(a). The Act defines a "qualified individual with a disability" as "an individual with a disability who, with or without *reasonable accommodation*, can perform the essential functions" of the job. 42 U.S.C. § 12111(8) (emphasis added). The protections of the ADA, however, are not limited to disabled employees. "Discrimination" includes adverse employment actions against qualified individuals because of their association with a disabled individual. 42 U.S.C. § 12112(b)(4). Specifically, the act provides that employers are prohibited from:

> excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association.

*Id.*

Thus, the ADA prohibits employers from taking adverse employment actions against employees because of their own condition, as well as employees deemed protected "because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." *See Reddinger v. Hospital Central Services, Inc.*, 4 F. Supp. 2d 405, 408 (E.D. Pa. 1998) (citing *Tyndall v. National Education Centers, Inc., of California*, 31 F.3d 209, 214 (4th Cir. 1994)); 29 C.F.R. § 1630.8. Some courts have referred to this as "association" discrimination. *Dollinger v. State Ins. Fund*, 44 F. Supp. 2d 467 (N.D.N.Y. 1999).

The duty owed in the case of a non-employee with a disability is limited, as highlighted by the ADA's interpretive guidelines, which state: "an employer need not provide the applicant or employee without a disability with a reasonable accommodation because that duty only applies to qualified applicants or employees with disabilities." 29 C.F.R. § Pt. 1630, App. In particular, an employer *is not* required to provide an employee with a modified work schedule as

5

an accommodation to enable the employee to care for a spouse with a disability. *Id; see also, Reddinger*, 4 F. Supp. 2d at 408 (explaining that the discrimination by association provision does not require an employer to restructure an employee's work schedule to enable the employee to care for a relative with a disability because that provision does not require the employer to provide a reasonable accommodation).

As construed by the Court of Appeals, the discrimination by association provision draws "a material distinction between firing an employee because of a relative's disability and firing an employee because of the need to take time off to care for the relative." *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 510 (3d Cir. 2009) (indicating that the discrimination by association provisions protects employees that suffer adverse employment actions that are "*motivated* by the known disability of an individual with whom the employee associates") (internal citation omitted). In *Erdman*, the Third Circuit held that an employee is protected under the discrimination by association provision if she suffered an adverse employment action because of the known disability of an individual with whom the qualified individual has an association or the employer fears or assumes that she might have to miss work to care for a disabled relative. *Id.* at 510–11.

Therefore, in order to establish a *prima facie* case for discrimination by association and survive a motion to dismiss, a plaintiff must prove that: (1) he was qualified at the time of the adverse employment action; (2) he was subject to an adverse employment action; (3) at the time of the adverse employment action, the plaintiff was known by his employer to have a relative or an associate with a disability; and (4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a

determining factor in the termination decision. *Barthalow v. David H. Martin Excavating, Inc.*, No. 5-2593, 2007 WL 2207897, *3 (M.D. Pa. July 30, 2007).

The standard is highly sensitive to the particular facts of a case. Applying *Erdman*, in *Scott v. Allied Waste Servs. of Bucks-Mont*, the court granted the employers motion for summary judgment. No. 10-105, 2010 WL 5257643, at *6 (E.D. Pa. Dec. 23, 2010) *aff'd*, 448 F. App'x 306 (3d Cir. 2011). Notably, the court held that there was nothing in the record to suggest that the plaintiff was fired because of his son's disability and the record was devoid of any evidence that the employer feared or assumed that the "employee might miss work to take care of" his disabled son. *Id.* In *Huggard v. Crown Bank,* another court recognized a *prima facie* case for discrimination by association. No. 11-6194, 2012 WL 529548, at *4 (D.N.J. Feb. 17, 2012). There, the plaintiff requested but was denied three days off to care for his disabled father. *Id.* at *1. Despite the denial, plaintiff informed his supervisor that he nonetheless needed to care for his father and took the requested days off, and was terminated shortly thereafter. *Id.* In denying the employee's motion to dismiss, the *Huggard* court held that the "allegations in the Complaint require a context specific inquiry and necessitate the development of a factual record before the Court can decide whether, as a matter of law" the defendant "could be held liable for association discrimination." *Id.* at *4 (indicating that the ADA by association claim was plausible because the factual allegations, taken as true, suggest the plaintiff "would not have been fired if he had requested time off for a different reason").

Similarly, in *Lynn v. Lee Memorial Health Systems*, the court denied the defendant's motion to dismiss the plaintiff's ADA by association claim. No. 15-161, 2015 WL 4645369, at *1 (M.D. Fla. Aug. 4, 2015). In that case, the plaintiff was given approved leave in order to care for her disabled daughter. *Id.* While she was on leave, the plaintiff was replaced by a different

7

employee and then, after returning from leave, was terminated.  *Id.*  The court held that those circumstances "raise[d] the reasonable inference" that the plaintiff was terminated "in light of her association" with her daughter's disability.  *Id.* at *2.  *But see, Anh Truong v. Dart Container Corp.*, No. 9-3348, 2010 WL 4237944, at *6 (E.D. Pa. Oct. 26, 2010) *adhered to on reconsideration sub nom.,* 9-3348, 2010 WL 4611980 (E.D. Pa. Nov. 12, 2010) (dismissing the ADA by association claim because the plaintiff failed to plead *any* facts to show that the alleged association "was a motivating factor in the decision to terminate" the plaintiff).

This is a close case, but Pollere has plausibly stated a claim for relief under the discrimination by association provision of the ADA.  There is no dispute that Plaintiff was qualified for his job, that he was subject to an adverse employment action, and that Defendants knew of Plaintiff's wife's disability.  My analysis therefore focuses on whether Plaintiff has alleged facts that would permit an inference that Plaintiff's wife's disability was a determinative factor in Defendants' termination decision.  At this early stage of litigation I conclude that he has.

On April 30, 2013, USIG issued Pollere an Employee Performance Notice stating that he "has used up all 12 weeks of medical leave as of 4/10/13."  Compl. at ¶ 43.  The Notice also identified that Pollere left early each day during the week of April 15, 2013.  However, according to Pollere, he was scheduled to work from 6:30 a.m. to 5:00 p.m. and the Notice indicates that he never left work before 5:00 p.m.  *Id.*  A jury might infer that the Notice was unwarranted and a product of USIG's frustration that Pollere was absent from work after he utilized FMLA to care for his disabled wife.

As Pollere worked sparingly between April 24 and June 15, 2013 because of his own disability, the alleged facts demonstrate that USIG's frustration mounted.  In the letter Pollere

8

received on June 8, 2013 from Ayers, USIG indicated that his recent absences would be treated as job abandonment *unless* he provided them with a doctor's note supporting his absences. Compl. at ¶¶ 55–56.  Pollere spoke with Ayers and informed him the doctor's note supporting his absence would be a few days late.  Ayers did not object or indicate to Pollere that this would be detrimental to the status of his employment.  Significantly, on June 13, 2013, Pollere provided the required note from his physician, in which she indicated he could return to work on June 17, 2013.  Nonetheless, USIG altered Pollere's employment status to "inactive."

The time Pollere missed from work was a **combination** of seven weeks spent caring for his wife, and additional time because of his own medical challenges.  Defendant was aware of the severity of Mrs. Pollere's condition, the effects of which are alleged to have continued through September, 2014.  As was the case in *Huggard*, dismissing Plaintiff's Complaint at this early stage would be inappropriate.  Based on the allegations in the Amended Complaint, it is at least plausible that USIG terminated Pollere because of issues regarding his wife's disability or because they assumed he would have future absences related to her spinal meningitis.

### IV. Conclusion

In analyzing this Motion to Dismiss, I am not determining whether Plaintiff is likely to prevail with his claim.  *See Twombly*, 550 U.S. at 557 (stating that the heightened pleading standard does not impose a probability requirement that the plaintiff's complaint must satisfy). Rather, I am only considering whether Plaintiff has plausibly stated a claim for which relief can be granted.  I conclude that he has, and therefore USIG's Partial Motion to Dismiss will be denied.  An appropriate Order follows.

/s/ Gerald Austin McHugh  
United States District Court Judge